UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE A. HART,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. ED CV 06-01233 (JCR)<br><br>MEMORANDUM OPINION AND ORDER |

Marie A. Hart ("Plaintiff"), seeks review of the decision of Michael J. Astrue ("Defendant"), the Commissioner of the Social Security Administration, denying her application for Supplemental Security Income ("SSI") benefits. As discussed below, this Court[2] affirms the decision of the Commissioner.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of the Social Security Administration. Thus, Michael J. Astrue is substituted for Commissioner Jo Anne B. Barnhart pursuant to Federal Rule of Civil Procedure 25(d)(1).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before United States Magistrate Judge John C. Rayburn, Jr. in the instant action. (*See* Dkt. Nos. 8, 9.)

1

**I.     PROCEEDINGS**

Plaintiff filed a Complaint on November 28, 2006, seeking review of the Commissioner's denial of her application for SSI.  On May 11, 2007, Defendant filed the certified Administrative Record ("AR") and an Answer.  On September 12, 2007, the parties filed a Joint Stipulation ("JS") in accordance with the Court's Case Management Order.  Thus, this matter is now ready for decision.

As the Court advised the parties in its Case Management Order, the decision in this case will be made based on the pleadings, the AR, and the JS filed by the parties.  In accordance with Federal Rule of Civil Procedure 12(c), the Court will determine which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

The Memorandum Opinion and Order shall constitute the Court's findings of fact and conclusions of law.

**II.     BACKGROUND**

On November 25, 2003, Plaintiff filed an application for SSI benefits, which was denied initially and upon reconsideration.  (JS at 2.)  On November 7, 2005, a hearing was held before Administrative Law Judge Lowell Fortune ("ALJ"), and on January 24, 2006, a supplemental hearing was held before the same ALJ.  (AR at 444, 452.)  On April 13, 2006, the ALJ issued an unfavorable decision (*id.* at 10), and on April 19, 2006, Plaintiff timely filed a Request for Review of the Hearing Decision.  (*Id.* at 8.)  On September 26, 2006, the Appeals Council denied review.  (*Id.* at 5.)

On November 28, 2006, Plaintiff timely filed the instant action, seeking judicial review of the denial of benefits by Defendant.

**III.     DISPUTED ISSUES**

Plaintiff raises the following grounds for reversal and/or remand:

1. Whether the ALJ properly considered the treating psychiatrist's evaluation;
2. Whether the ALJ properly considered the treating therapist's clinical assessment; and
3. Whether the ALJ posed a complete hypothetical question to the vocational expert.

(JS at 2.)

## IV.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted).

The Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## V.  DISCUSSION

### A.  Reversal Is Not Warranted Based on the ALJ's Alleged Error with Respect to the Opinions of Plaintiff's Treating Psychiatrist

The ALJ found that Plaintiff had the medically determinable severe

impairments of morbid obesity, degenerative disc disease of the lumbar spine, bilateral degenerative arthritis of the knees, a major depressive disorder, and polysubstance abuse in partial remission.  (AR at 15.)  Plaintiff contends the ALJ erred because he "completely ignored" the evaluation of Plaintiff by her treating psychiatrist, Dr. Marissa Mejia, while accepting the contrary testimony provided by the medical expert, Dr. David Glassmire, at the administrative hearing.  (JS at 3.)  Moreover, Plaintiff claims the ALJ failed to provide specific and legitimate reasons for disregarding Dr. Mejia's opinion.  (JS at 7.)

### *Treating Physician's Report*

The records indicate Plaintiff first saw Dr. Mejia on March 8, 2004, as a walk-in patient for medication.  (AR at 202.)  Plaintiff then attended a follow-up session with Dr. Mejia on June 1, 2004, for additional medication.  (*Id.* at 201.)  Plaintiff also needed a psychiatric clearance to enter Cedar House, a rehabilitation facility, and to that end, saw Dr. Mejia on August 2, 2004, for the psychiatric clearance (*id.* at 196), and again, on August 11, 2004, for a psychiatric evaluation (*id.* at 194).  Plaintiff reported to Dr. Mejia that she had been depressed since childhood, but the depression had gotten worse in the past two years.  (*Id.*)  She also reported numerous medical problems to Dr. Mejia, including obesity, gastric bypass, arthritis, borderline diabetes, and a past history of "alcohol, cocaine, speed, and marijuana abuse."  (*Id.*)  Plaintiff reported a past history of depressive episodes as well as hypomania.  (*Id.*)  Plaintiff also explained to Dr. Mejia that she started hearing voices when she was in her late twenties and would hear voices even when sober.  (*Id.*)  She reported suicidal thoughts (i.e., after her mother's death, she wanted to end her life by driving her car into a wall; Plaintiff reported going head on with another car and being hospitalized for a month).  (*Id.*)

In her Adult Psychiatric Evaluation, apparently based solely on Plaintiff's self-reports, Dr. Mejia noted that Plaintiff's behavior, appearance, speech, thought processes, and memory were all within normal limits.  (*Id.* at 195.)  She described

Plaintiff as depressed with tearful affect and noted Plaintiff's report of visual and auditory hallucinations. (*Id.*) Dr. Mejia also indicated that Plaintiff's thought content included paranoid/persecutory delusions and that her insight and judgment were fair. (*Id.*) She diagnosed Plaintiff with "Bipolar II Disorder" and "Polysubstance abuse." (*Id.*) She also indicated a Global Assessment of Functioning ("GAF") score of 45-50. (*Id.*) A score of 45-50 indicates that the individual has "**[s]erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (Michael B. First ed., Am. Psychiatric Ass'n, 4th ed. 2000).

### *Dr. Eklund's Report*

Dr. Steve Eklund completed an Adult Psychiatric Evaluation of Plaintiff on December 6, 2004, and thereafter, saw Plaintiff on four occasions.[3] (AR at 397-404.) Plaintiff reported to Dr. Eklund that she had been depressed on a daily basis for years and that she had attempted suicide on five occasions. (*Id.* at 402.) Plaintiff also reported that she had no auditory or visual hallucinations for the past two years while taking the medication Abilify. (*Id.*) She also told Dr. Eklund that "[p]eople are out to get me sometimes," and that she had a history of panic attacks. (*Id.*) Dr. Eklund found her perceptual processes, thought processes, and thought content all within normal limits. (*Id.* at 403.) He described Plaintiff's mood as depressed and flat, and her insight and judgment as fair. (*Id.*) Dr. Eklund diagnosed Plaintiff with major depression with psychotic features, and with a history of polysubstance dependance in early remission. (*Id.*) Dr. Eklund also

---

[3] Records indicate that Plaintiff had face to face medication visits with Dr. Eklund on January 19, 2005, February 23, 2005, March 23, 2005, and April 20, 2005 (AR at 398-401), and had her medication changed on May 3, 2005 (*id.* at 397).

gave Plaintiff a GAF score of 45. (*Id.*)

### *Medical Expert's Opinion*

The medical expert, Dr. David Glassmire, reviewed the entire record and gave testimony at the administrative hearing. The ALJ gave "great weight" to Dr. Glassmire's opinion regarding Plaintiff's mental impairments, as demonstrated by the following statements from his decision:

> [Dr. Glassmire's] opinions were well thought out and insightful and he, alone, had an opportunity to review the claimant's mental health treatment evidence in full and consider her testimony at the hearing. As noted above, the doctor identified depression and poly-substance abuse in partial remission as the claimant's mental impairments, and described the claimant's functional limitations. He stated that with or without substance abuse, the claimant should not work at a production-rate pace or perform work that requires hyper–vigilance. She should not have responsibility for the safety of others, nor operate potentially dangerous equipment. The doctor confirmed that although he found the claimant's substance abuse is a severe impairment, it is not material to the claimant's functional limitations which would exist in its absence.
>
> In response to a question from the claimant's attorney regarding the claimant's allegations of paranoia reported in the record, Dr. Glassmire acknowledged the claimant had reported having some paranoia, but in his opinion there was no evidence to indicate a medically documented persistence, either continuous or intermittent, as described in Listing 12.03. In response to an additional

> question about the severity of the claimant's impairment, given a global assessment of functioning (GAF) score of 45 reported by [Dr. Eklund] on December 6, 2004, Dr. Glassmire explained that GAF scores do not reliably translate into work limitations. . . . Although it does indicate some limitations in the Claimant's functioning, it does not speak directly to her work capacity . . . . Dr. Glassmire further questioned the validity of the GAF score itself. He pointed out that no significant evidence was produced from the mental status examination to substantiate a GAF score that low. For example, Dr. Glassmire referred to the report itself, and pointed to the examiner's own observations (just above the GAF score) that the claimant's affect was depressed and flat, and, regarding memory, the Claimant said she loses things; however, her perceptual processes, thought processes and thought content were within normal limits; and her insight and judgment were fair. These observations and conclusions, Dr. Glassmire explained, are inconsistent with a GAF score of 45.

(AR at 19.)

### 1. **Analysis**

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. *McAllister v. Sullivan*, 880 F.2d 1086, 1089 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747,

751 (9th Cir. 1989) (*citing Rodriguez v. Bowen*, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1986)). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. *See* 20 C.F.R. § 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If, as here, the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Magallanes*, 881 F.2d at 751; *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

In his decision, the ALJ discussed the records from the San Bernardino County Department of Behavioral Health for the period of August 19, 2002, through August 11, 2004. (AR at 20.) Dr. Mejia's report was among those records. (*Id.* at 194.) Thus, Plaintiff's assertion that the ALJ "completely ignored" Dr. Mejia's report does not appear to be supported by the record.

Yet, even if the ALJ did discount Dr. Mejia's report, he gave specific and legitimate reasons in his decision, which were based on the substantial evidence in the record. The ALJ's specific and legitimate reasons were based on the opinions of Dr. Glassmire, which the ALJ explained were particularly insightful because Dr. Glassmire was the only medical professional who had the opportunity to review Plaintiff's mental health treatment records in full and consider her testimony at the hearing. (*Id.* at 19). Dr. Mejia, conversely, saw Plaintiff on just four occasions, three of which were only thirty-minute medication visits in order for Plaintiff to receive psychiatric clearance to be able to enter a rehabilitation program. (*Id.* at 196, 201-02.) It was not until the final visit on August 11, 2004, that Dr. Mejia conducted an adult psychiatric evaluation. (*Id.* at 194.)

Dr. Mejia's August 11, 2004, evaluation, including the GAF opinion, was a

"snapshot" assessment of Plaintiff's condition, and not a longitudinal evaluation. Therefore, the evaluation has very little probative value to Plaintiff's condition over the course of the statutorily mandated twelve-month period. *See* 42 U.S.C. § 423(d); 20 C.F.R. §§ 416.905, 416.927(a). The Commissioner's regulations provide that more weight is given to longitudinal opinion evidence. 20 C.F.R. § 416.927(d)(2).

As to the GAF score of 45-50 assessed by Dr. Mejia, it is not meant to be a conclusive medical assessment of overall functioning, but rather, it is only intended to be "useful in planning treatment[,] . . . measuring its impact, and in predicting outcome." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (Michael B. First ed., Am. Psychiatric Ass'n, 4th ed. 2000) ("DSM-IV"). Moreover, the Social Security regulations do not require an ALJ to take the GAF score into account in determining the extent of an individual's disability. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the [residual functional capacity ("RFC")], it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.").

The ALJ specifically asked Dr. Glassmire during the hearing about the significance of the GAF score of 45. (AR at 478). The ALJ noted in his decision that Dr. Glassmire did not equate a GAF score with the ability to work, although Dr. Glassmire did note that the score does indicate certain limitations in functioning. (*Id.* at 19.) The ALJ further indicated that according to Dr. Glassmire, the DSM-IV only provides guidance in assigning a GAF score, but that there was really no evidence to indicate the reliability of that description in relation to limitations on work ability. (*Id.*) Finally, the ALJ noted that Dr. Glassmire questioned the validity of the GAF score itself, pointing out that no significant evidence was produced from the mental status examination to substantiate

Plaintiff's low GAF score. (*Id.*) Based on the above discussion, the Court finds that the ALJ provided specific and legitimate reasons based on the substantial evidence in the record for his decision.

Accordingly, the ALJ properly considered the treating psychiatrist's clinical assessment, and reversal is not warranted.

**B.   The ALJ Properly Considered the Treating Therapist's Clinical Assessment**

Next, Plaintiff argues that the ALJ failed to consider a clinical assessment conducted by Mr. Daniel C. Nunez, L.C.S.W., a licensed social worker, on December 1, 2003. (JS at 12.) Plaintiff believes it is unfair for the ALJ to use evidence from an evaluation conducted by Dr. Eklund that is unfavorable to Plaintiff, while ignoring evidence from an assessment by Mr. Nunez that is favorable to Plaintiff and consistent with Dr. Mejia's evaluation. (*Id.* at 12.)

On December 1, 2003, Mr. Nunez conducted a clinical assessment of the Plaintiff, which indicated that Plaintiff's insight and judgment were poor, with a depressed mood and sad affect. (AR at 217.) In discussing the records from the San Bernardino County Department of Behavioral Health for the period of August 19, 2002, through August 11, 2004, in his decision, the ALJ specifically noted Mr. Nunez's diagnosis of Plaintiff with "substance abuse and a major depressive disorder . . ." and a reported GAF score of 40. (*Id*. at 20, 218). Therefore, the ALJ specifically reviewed and considered Mr. Nunez's assessment.

As discussed in Part IV.A.1, *supra*, the ALJ did not give great weight to certain treating physicians because he believed that the assessment by Dr. Glassmire was the most comprehensive. Acceptable medical sources include licensed physicians, and licensed or certified psychologists. 20 C.F.R. § 416.913(a). In addition to evidence from acceptable medical sources, however, evidence from other sources, such as public and private social welfare agency personnel, can be used to show the severity of impairments and their effect on the

ability to work. *Id.* § 416.913(d). Nevertheless, the opinions of social workers, such as Mr. Nunez, are not entitled to the weight given to treating physicians. *Compare* 20 C.F.R. § 416.913(a) *with* 20 C.F.R. § 416.913(d). Moreover, Mr. Nunez saw Plaintiff on just one occasion. Based on Dr. Glassmire's comprehensive examination of Plaintiff's entire treatment records and his credentials as a medical expert, the ALJ properly decided to give more weight to Dr. Glassmire's opinion than that of Mr. Nunez.

Accordingly, the ALJ properly considered the treating therapist's clinical assessment, and reversal is not warranted.

### C. **The ALJ Posed a Complete Hypothetical Question to the Vocational Expert**

Plaintiff argues that it is legal error for the ALJ not to incorporate into a hypothetical question Plaintiff's impairments and limitations as determined by Dr. Mejia and Mr. Nunez. (JS at 19.) Plaintiff also contends that because the ALJ omitted this probative evidence from the hypothetical questions, the vocational expert ("VE") was unable to properly assess the Plaintiff's ability to perform and sustain full-time competitive work. (*Id.*)

The ALJ must consider whether a plaintiff's mental and physical impairments so incapacitate the plaintiff that he or she is unable to perform available work. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (*citing* 20 C.F.R. § 404.1523; *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996)). To make that determination, the ALJ may elicit testimony from a VE, but "the hypothetical [posed to the vocational expert] must consider all of the claimant's limitations." *Light*, 119 F.3d at 793 (*citing Andrews v. Shalala*, 53 F.3d 103, 1044 (9th Cir. 1995)). If the hypothetical "does not reflect all of the claimant's limitations, . . . [then] the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1990); *see Kornock v. Harris*, 648 F.2d 525,

527 (9th Cir. 1980) (finding testimony of vocational expert must be reliable in light of medical evidence in order to qualify as substantial evidence). While hypothetical questions posed to a vocational expert need not include all alleged limitations, they must include those limitations substantiated by the evidence of record that the ALJ finds to exist. *See*, *e.g.*, *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001); *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Copeland v. Bowen*, 861 F.2d 536, 540 (9th Cir. 1988); *Martinez v. Heckler*, 807 F.2d 771, 773-74 (9th Cir. 1986).

As to Plaintiff's physical limitations, the ALJ specifically found that Plaintiff was precluded from operating motorized equipment, including automobiles and potentially dangerous equipment. (AR at 16). He also found that Plaintiff was able to comprehend and remember moderately detailed instructions and follow through with moderately complex tasks. (*Id*.) The ALJ found that she was unable to work at a production-rate pace and could not perform work requiring hyper-vigilance. Rather, the ALJ found that Plaintiff was limited to a habituated, object-oriented setting, with occasional interaction with coworkers and the public. (*Id.*) He also found that Plaintiff should have no responsibility for the safety of others, and perform no work in which the primary focus is face-to-face contact with the public. (*Id*.)

As to Plaintiff's mental limitations, the ALJ gave specific reasons why he did not give great weight to the opinions of Dr. Mejia and Mr. Nunez, but rather found that Dr. Glassmire, who had considered the whole record, to be a much more reliable source. *See* discussion *supra* Parts IV.A.1, IV.B. Furthermore, the ALJ gave substantial weight to the mental residual functioning capacity assessment and psychiatric review technique report performed by K. Gregg, M.D., a Board Certified State Agency Review Psychiatrist, both dated July 7, 2004. (AR at 19.)

Dr. Gregg determined that Plaintiff did not suffer from significant limitations in comprehension and memory, or in sustained concentration and

persistence, but did find that Plaintiff was moderately limited in the ability to carry out detailed instructions and to interact appropriately with the general public. (*Id.* at 345-47.) Dr. Gregg, in the psychiatric review technique report, based his medical conclusions on a depressive disorder and a substance addiction disorder. (*Id.* at 349, 352.) As to functional limitations, Dr. Gregg's findings indicated that Plaintiff had no restrictions of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (*Id.* at 359.) Therefore, in making the findings, the ALJ did consider all of Plaintiff's physical impairments and limitations, as well as her mental impairments.

After considering all of Plaintiff's impairments, the ALJ asked the VE whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity. (*Id.* at 486-89.) Given all these factors, the VE testified that the individual would be able to perform the requirements of representative sedentary, unskilled occupations such as addresser, document preparer, or cutter and paster. (*Id.* at 488-89.)

Based upon the evidence in the record, there was no error in the ALJ's weighing of the opinions of Dr. Gregg and Dr. Glassmire, or in the impairments and limitations included in the ALJ's hypothetical questions. Therefore, there was no error in the ALJ's hypothetical questions to the VE, which did not include the limitations as determined by Dr. Mejia and Mr. Nunez.

\\

\\

**ORDER**

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

DATED: January 30, 2008

HONORABLE JOHN C. RAYBURN, JR.
UNITED STATES MAGISTRATE JUDGE